## Case No. 13,031.

### SMITH v. CREASE.

[2 Cranch, C. C. 481.] [1]

Circuit Court, District of Columbia. May Term, 1824.

PRINCIPAL AND SURETY—EXTENSION OF TIME—RELEASE OF SURETY.

If a creditor having the bond of his debtor with a surety, takes a new security payable at a day beyond the time of payment of the bond, without the consent of the surety, with the understanding that he was not to trouble the principal for the money, unless the new security should prove to be good for nothing, the surety is discharged, and his remedy is in equity.

This was a suit in equity, in which the plaintiff [Joseph Smith] stated that he was surety for Thomas Mount, in two single bills for $1000 each, dated in July, 1815; one payable with interest on the 1st of July, 1817, and the other on the 1st of July, 1818, to Anthony Crease, the defendant's testator; and when he thus became surety, he took a deed of trust upon the property of Mount for his indemnification. That the first of the bills having become payable, and remaining unpaid; and before the second had become payable, the creditor, Anthony Crease, without consulting the plaintiff, took from Mount an assignment of one J. W. Bronaugh's bond for $2000, to one Richard Weedon, who had assigned it to one John Mount, who had assigned it to the said Thomas Mount; which bond was payable on the 1st of March, 1819, eight months after the last of the bills in which the plaintiff was a surety, and was to be held by Crease as a collateral security for Mount's debt; that is to say, the said Anthony Crease was "to use due diligence to collect the said debt of the said J. W. Bronaugh, and if the same was not collected, your orator did suppose that resort was to be had to the said Thomas Mount, and the other assignors of the said bond." That when the plaintiff was informed of this arrangement, he considered himself released from his responsibility, and gave up to the said Thomas Mount the lien which he held for his indemnification. That Crease obtained judgment against Bronaugh upon the bond, but he never paid it, and was discharged under the insolvent act. That Crease did not bring suit against the assignors. That after this arrangement, Crease never set up any claim against the plaintiff for Mount's debt, and died in September, 1820, leaving the plaintiff under a belief that he was no longer liable for the debt; but that his executors have obtained judgment at law against him upon the bills, and will enforce the same unless restrained, &c.

The defendants, in their answer, deny that Bronaugh's bond was received in payment of the debt of Mount, or on any other terms than as a collateral security. They deny that their testator agreed, or bound himself to wait the

[1] [Reported by Hon. William Cranch, Chief Judge.]

result of the collection of Bronaugh's bond; or in any manner precluded himself from proceeding against Mount and his surety whenever he pleased, on their original obligations. They deny that the plaintiff took the deed of trust for his indemnity when he became surety for Mount, and that his supposed exoneration was the motive for his release of his lien upon Mount's property. In order to account for not having brought suit against the assignors of Bronaugh's bond, they say they have been informed that John Mount and Richard Weedon are insolvent. They also say that they have returned Bronaugh's bond to Thomas Mount.

The deposition of Thomas Mount was taken, in which he says, that, "as he" (Mr. Crease) "appeared uneasy, I told him I would give him this bond," (that is, Bronaugh's bond,) "with the understanding that he was not to trouble me for the money without this bond should prove good for nothing, to which he agreed, and took the bond, and accordingly never did ask me for any part of the principal afterwards." The receipt given by Mr. Crease for Bronaugh's bond was as follows: "Memorandum. Received, Alexandria, 3 April, 1818, of Mr. Thomas Mount, J. W. Bronaugh's bond, assigned by Richard Weedon to John Mount, and by John Mount to Thomas Mount, for $2000, which I hold as collateral security for moneys due me. Anthony Crease. Said bond becomes due, 1 March, 1819."

The cause having been set for decree by consent, and submitted to the consideration of the court (in the absence of THRUSTON, Circuit Judge) during the vacation,

MORSELL, Circuit Judge, at November term, 1824, after stating the case, delivered the opinion of the court, as follows:

Although the testimony of Mount is thus let in, it would be still insufficient, unless fortified by strong and pregnant circumstances, being contradicted by the oath of the defendants. Let us, then, examine what the circumstances are. Was there any previous engagement on the part of Mount to give this additional security, at the time it was given, for any other and different consideration? None such appears in the proof in the case. In the absence of all proof on the subject, what is the common and ordinary understanding in a case where the bond of another man is assigned as such collateral security? Is it not universally and invariably implied that he shall use all necessary and legal steps to obtain payment from the obligor, (unless insolvent) first, and before he proceeds against the assignor? And does not the law raise such an implied condition? But this is a stronger case than the ordinary; for the bond of Bronaugh thus received, had actually a considerable time to run, beyond the time when both the notes would fall due, before it could even be demanded. Can it be supposed for a moment, that it was not understood between the parties, that Crease should at least in-

dulge Mount on the bills until Bronaugh's bond should become due, so that it might be ascertained whether that obligation would be paid or not? And what has been the conduct of Crease and his executors? Have they not actually waited, and indulged Mount for years after the bills became due, and until after the suit against Bronaugh had been prosecuted to a stage conclusively to show that no fruits were to be had from the judgment; that Bronaugh was a bankrupt; their own actions thus strictly corresponding with what Mount states to have been the agreement.

It does seem to me, therefore, that these circumstances are strong and pregnant, and completely fortify and establish Mount's testimony. Before, however, the legal effect is considered, I will notice some other parts of the case.

1. As to the time which was suffered to elapse between the time when the bills became due, and that of suits being brought against Mount and Smith; I should say that mere delay to call on the principal debtor, or mere forbearance to sue him would not amount to a discharge of the surety, unless gross laches were proved. I am not prepared to say that the negligence in this case did amount to such gross laches.

2. As to what is stated in the answer to have taken place between one of the defendants and the complainant, Smith, shortly before the bringing of the suit against him, the negotiation and the offer appear to have taken place with a view to prevent suit being brought, and in a spirit of compromise; and there does not appear to have been any such clear binding promise or engagement on the part of Smith, as to revive and set up the claim, if the same was, at the time, extinguished as to him, and which will now be considered by applying the law to what appears to be the proof in the case.

The law, as clearly laid down and settled, will, I think, be found to be this: The surety being importantly interested in the contract, or agreement, there should be no transaction with the principal without acquainting him therewith. The original implied contract is, that as far as the nature of the original security will admit, the surety, paying the debt, shall stand in the place of the creditor; so also the surety has a right, the day after the bond is due, to come into a court of chancery and insist on its being put in suit against the principal debtor: and finally the law seems to be clear, that if a creditor agree with his debtor to postpone the day of payment, or in any other way to change the terms of the contract, without the consent of the surety, the latter is discharged, even although the change should be for his advantage.

The last consideration will be, that admitting the arrangement thus to have operated a discharge, is the complainant in time, and before a proper court, with his defence?

Should not such a defence have been set up to the action at law, especially as to the single bill which had not fallen due at the time of the agreement? On this point, I confess I have felt considerable difficulty in the course of my examination into the subject. I have found the American authorities differing, some being on one side, and some on the other. The English authorities are pretty clear that the chancery forum is the proper one; and I incline to think so also.

Let the decree, therefore, in this case, be for the complainant, making the injunction perpetual. The authorities relied on are: 7 Bac. Abr. 506; 10 Johns. 180, 587; 6 Ves. 734; 18 Ves. 21; 2 Ves. 540.